IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CINCINNATI, OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO.: 1:12CR00064-001 |
| Plaintiff | : | (Judge Barrett) |
| V. | : | DEFENDANT KEVIN HUFF'S SENTENCING MEMORANDUM |
| KEVIN HUFF, | : | |
| Defendant | : | |

Mr. Kevin Huff ("Mr. Huff") is a nonviolent offender who has plead guilty to Conspiracy to Distribute Oxycodone, 21 U.S.C. §846, 841(a)(1) and (b)(1)(C) and Conspiracy to Launder Monetary Instruments, 18 U.S.C. §§1956(h) and 1946(a)(10(A)(i). He is scheduled for sentencing on April 29, 2013. Counsel for Mr. Huff respectfully submits the following memorandum for the Court's consideration in determining an appropriate sentence in this case.

s/R. Scott Croswell<br>
R. Scott Croswell<br>
Ohio Reg. No. 019726<br>
*Attorney for Defendant*<br>
Croswell & Adams Co., L.P.A.<br>
1208 Sycamore Street<br>
Cincinnati, OH 45210<br>
(513)241-5670<br>
rscroswell@fuse.net

I.  **INTRODUCTION**

In the case of *United States v. Booker*, 543 U.S. 220 (2005), the United States Supreme Court found that the mandatory United States Sentencing Guidelines violated the Sixth Amendment of the Constitution. The Supreme Court remedied this problem by excising the statutory provisions which made the sentencing guidelines mandatory. Since *Booker*, the Supreme Court has clearly stated that

1

18 U.S.C. §3553(a) governs sentencing decisions. *Rita v. United States*, 127 S. Ct. 2456 (2007). Although sentencing courts are required to give some consideration to the sentencing guideline calculations as one of the 18 U.S.C. §3553(a) factors, the sentencing court cannot simply defer to the policy considerations of the United States Sentencing Commission. *Rita*, 127 S. Ct. at 2463, 2465, 2568, *Gall v. United States*, 128 S. Ct. 586, 594-95 (2007). Sentencing judges may consider any and all arguments that a specific guideline provision fails to reflect §3553(a) considerations, reflects unsound judgment or that a different sentence is appropriate regardless. *Rita, supra* at 56, 2465, 2468. A sentencing court may also disagree with a specific guideline provision and may impose a non-guideline sentence merely because the guideline itself lacks a basis in empirical data or study. *Kimbrough v. United States*, 128 S. Ct. 558, 566-69, 574-75 (2007). The Court "may not presume that the guideline range is reasonable." *Gall v. United States*, 128 S. Ct 586, 594-95 (2007). Rather, the Court "must make an individualized assessment based upon the facts presented." *Id*. When determining an appropriate sentence, the Court must consider the factors listed in §3553(a) to impose a sentence that is "sufficient but not greater than necessary." 18 U.S.G. §3553(a). *United States v. Gossman*, 513 F.3d 592, 564 (6th Cir. 2008).

In this memorandum counsel for Mr. Huff will introduce Mr. Huff to the Court, discuss the impact of the Federal Sentencing Guidelines in this case and discuss all relevant 18 U.S.C. §3553(a) considerations.

## II. THE DEFENDANT

Mr. Huff, age 36, a married father of two young children, is before the Court for sentencing after having pled guilty to related offenses involving drugs and money laundering of the proceeds from the sale of Oxycodone. This conduct was charged in a two count Bill of Information. Mr. Huff was released on a personal recognizance bond 10 months ago and has maintained full compliance with the terms of his release. He has cooperated extensively with the Government and

voluntarily agreed to the forfeiture of six parcels of real estate, three vehicles, three all-terrain recreational vehicles, and a boat. Mr. Huff's cooperation has resulted in the arrest and prosecution of at least five individuals all committing separate offenses from one another. He agreed to wear a recording device during the investigation involving these individuals. Not only has his cooperation led to the arrest of five individuals, but it also has led to forfeitures in excess of $300,000.00. In addition, Mr. Huff has relinquished approximately $138,875.46 to the Government. He stands ready to testify when called.

Mr. Huff is an under-educated man without the necessary skills to obtain gainful employment in order to support his family. He acknowledged moving frequently as a youth so his father could find work. The family lived in abject poverty, washing clothes and often bathing in a creek. Mr. Huff was ridiculed and bullied because of being poor and lacking appropriate clothing. While his home life was rich in terms of loving family relationships and closeness, the outside world ostracized and shunned him because he lacked some of the necessities of life and "things" many people take for granted. This emotional and psychological abuse at the hands of classmates led him to quit school in the 10th grade.

Mr. Huff has had sporadic periods of employment and when not working, has always sought "odd jobs" to support his family. His wife is unemployed and has never worked outside the home. Although a six-year member of the local carpenters union, long term, union-wage employment has not typically been available to him. Often he, like his father, has struggled to support his family. He opened the pain clinic to provide for his family. His biggest fear is that his children will suffer the ridicule and humiliation he experienced as a child. This fear drove him to make a bad decision the consequences of which are the potential for a lengthy prison term.

Friends and family members believe Mr. Huff is selfless and caring. He has been described as putting others' needs before his own despite it causing personal sacrifice. His parents and

siblings, as well as his mother-in-law, acknowledge his generosity and assistance to them, often on a daily basis. All financial support has ceased as Mr. Huff does not have the financial wherewithal to provide for his extended family and is barely making ends meet for his wife and children.

The past criminal conduct of Mr. Huff consists of a drug charge, an assault, driving violations, and alcohol-related offenses. While there is some significance, it is reflective of someone with Mr. Huff's history of being "picked on" and mistreated by his peers. Most of his criminal activity occurred as a young adult in his late teens and early 20s when he was trying hard to "fit in" and belong, circumstances that eluded him as a child.

There are past substance abuse issues for which he wants to obtain treatment. As with many who abused alcohol at such a young age, Mr. Huff may have had a false sense of bravado and confidence when drinking. It also provides an escape and was a coping mechanism for his feeling of inadequacy and insecurity. His other drug usage occurred for the most part during his teenage years, although his use of oxycotin a couple of years ago was precipitated by anxiety and an inability to sleep. There is a history of mental health issues with his mother, although there is no evidence of any such problems with Mr. Huff at this time.

### III. OFFENSE CONDUCT

From July 2009 up to June 2010, Mr. Huff conspired with others to distribute oxydone in the Southern District of Ohio. As a direct result of monies gained from this illegal activity, Mr. Huff committed numerous monetary crimes. The statutory penalty range for each offense is 0 – 20 years. There is no statutory minimum mandatory penalty required.

### IV. THE IMPACT OF THE FEDERAL SENTENCING GUIDELINES

The presentence report assigns a total offense level of 37 and a criminal history category of III. The guideline imprisonment range is 262 – 327 months. The presentence report recommends a

maximum 240 months sentence on count one and a 22 month consecutive sentences on counts two for a total sentence of 262 months.

Counsel for Mr. Huff suggests that a sentence in the guideline range would be excessive, oppressive, and overly harsh. Indeed, many Courts have found the Guideline range calculations for offenses involving the distribution of oxycodone to be excessive. Data extracted from the United States Sentencing Commissions 2010 and 2011 monitoring datasheets reveals that the Courts have placed sentences below the guideline range over 70% of the time including 41.7% with government sponsored reduction and 28.4% without government sponsored reduction. (See attached Ex. A).

### V. 18 U.S.C. §3553

As discussed previously, the Guidelines are no longer mandatory but are advisory only. The ultimate sentence is within the sole discretion of the Court. *United States v. Booker*, 543 U.S. 220 (2005). The Court "may not presume that the Guideline range is reasonable. *Gall v. United States*, 552 U.S. 38, 50 (2007). Rather, the Court "must make an individualized assessment based upon the facts represented." Id. When determining an appropriate sentence, the Court must consider the factors listed in 18 U.S.C. §3553 (2011) *United States v. Grossman* 513 F.3d 592, 594 (6th Circuit 2008). The United States Court of Appeals for the Sixth Circuit has held that the Court's duty at this stage is "to impose a sentence sufficient but not greater than necessary to comply with the §3553(a) factors." *Grossman*, 513 F.3d at 594. This Court's sentencing determination "involves an exercise of judgment, not mathematical proof." Id. at 596. Section 18 U.S.C. 3553(a) sets forth the factors to be considered by when making sentencing determinations:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

5

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established [by the USSG]:

(5)    any pertinent policy statement [from the U.S. Sentencing Commission]:

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

## VI.   18 U.S.C. §3553 SENTENCING CONDITIONS

A previously stated, Mr. Huff is facing a sentencing range of 0 – 20 years on each Count in the Information. There is no mandatory minimum sentence in this case. This Court is permitted to impose any sentence within that range. The sentencing guidelines, as calculated by probation, suggest a sentencing range of 262 months and a recommended sentence of 262.

While Mr. Huff and counsel recognize that a substantial sentence is required in this case, counsel for Mr. Huff respectfully suggests that a sentence of 262 months would clearly be excessive under the circumstances and would be inconsistent with the principles set forth in 18 U.S.C. §3553. Counsel respectfully presents the following for the Court consideration:

1. <u>**Nature and Circumstances of Offense**</u>

Mr. Huff owned a pain clinic from July 2009 to June 2011. He employed numerous medical professionals including medical doctors who improperly prescribed pain medication (oxycodone) to patients. While Mr. Huff's conduct is serious, surely it would be viewed as no more serious than that of the medical professionals who actually prescribed this medication. Indeed, a strong argument could be made that his conduct is less egregious than that of trained, educated, medical professionals who violated a duty of care to their patients. Counsel for Mr. Huff respectfully suggests that Mr. Huff's sentence should be no greater than that of the trained medical personnel involved in this case. While counsel does not have specific sentences previously given to the medical personal, it is believed that the sentences are much closer to the 60 months range than the range of 262 months.

2. <u>**History of Defendant**</u>

While it is true that Mr. Huff has a previous history of criminal conduct, it is also equally true that the vast majority of this conduct occurred 14 years ago when he was 20 years of age, thus, his criminal history score gives significantly greater weight to these offenses than circumstances support.

3. <u>**Need to Reflect Seriousness of Offense to Promote Respect of the Law and to Provide Just Punishment**</u>

Both counsel and Mr. Huff concede that a significant sentence is called for in the case. However, picking an exact sentence is an extremely subjective matter. It is one which must be weighed heavily to assure that the sentence imposed is "sufficient but not greater than necessary to comply with the §3553(a) factors." *Grossman*, 513 F. 3d at 594.

By any standard a sentence of 60 months is a significant penalty and one which is twice as severe (120 months) could be considered in some circumstances to be oppressive. Surely, a

sentence in the 60 – 120 month range would reflect the seriousness of the offense, promote respect of the law, and provide just punishment for Mr. Huff's actions.

4. **Afford Adequate Deterrence to Criminal Conduct**

A sentence in the 60 – 120 month range clearly will act as a deterrence to others. By any standard 10 years of a person's life is a severe penalty to pay for a non violent crime and would clearly act as a deterrent to others.

5. **Protection of the Public From Future Crimes**

The best way to protect the public from future crimes is to impose a sentence which will give Mr. Huff a chance at a decent life where he can participate in a meaningful fashion in caring for his family and functioning in society in a lawful and positive manner.

While Mr. Huff should receive a significant sentence in this case, it should be one that gives him some hope and a chance at a better life in the future. To sentence him to 20 years removes all hope and will return him to society at the age of 56 with nothing left. The best way to protect the public from future crimes is to return Mr. Huff to society with the needed educational or vocational training he needs to support himself and his family.

6. **The Need for Educational and Vocational Training, Medical Care Other Correctional Treatment in the Most Effective Manner**

Mr. Huff is an uneducated 34 year old with no true job skills or training. He failed to maintain meaningful employment for any significant period of time. While his conduct in this offense is both wrong and illegal, it is understandable how Mr. Huff made the decision to engage in this conduct. Had he had the ability, education, and job skills to gain productive employment, he may have made better decisions. While there is no doubt that he alone made the decision which

brings him before the Court, it is clear that his lack of education and lack of sophistication impacted his decision making.

### 7. Sentence Disparity

It is a respectfully submitted that the recommended sentence of 262 months would create an unwarranted sentencing discrepancy in this case. While counsel for Mr. Huff does not have available all of the specific sentences given in all similar cases, it is believed that the vast majority of these sentences are significantly less than the recommended sentence in this case.

## VII. CONCLUSION

When passing the appropriate sentence in any given case, it is prudent to balance the need for punishment, deterrence, and protection of society against the need to rehabilitate the offender.

Mr. Huff has cooperated extensively with the Government in the apprehension and prosecution of others. While cooperation is traditionally considered to be a factor for downward departure, it is also an indicator of a person's amenability to rehabilitation. Admitting one's wrongs and stepping forward to cooperate with the Government is the first step toward changing an attitude and life style.

Since the Court has complete discretion in sentencing, there are relevant questions to be answered. When is enough, enough? When does a sentence go from being productive to both society and the individual and instead become counterproductive? When does a sentence go from being fair to oppressive? Clearly, these are subjective questions and can only be answered by the Court. Counsel for Mr. Huff does not presume to have the answers to these questions, but would suggest that these questions definitely are relevant when the recommended sentence for a non violent crime carrying 0 – 20 years is the maximum sentence available.

Mr. Huff's wife and children will be financially and emotionally devastated by the imposition of any prison sentence. It is likely the family will be forced to seek public assistance as Mrs. Huff has never worked outside the home and is caring for their two children, one of which is a toddler. The fear of not being able to care for his family and his children experiencing some of the same problems he had as a youth will become a reality for him.

Mr. Huff has surrendered all of his assets, including cash and all property. He has attempted to rectify his current circumstances to the best of his ability and remains accepting of the possibility of serious consequences for his actions in the instant offense. He has no money to preserve for the support of his family nor can he pay any type of fine.

Mr. Huff is a young man in need of additional vocational training which in the prison system may last for two to three years at most. Substance abuse treatment typically lasts for one year with support groups available beyond that timeframe. With appropriate treatment and job training, as well as structure and supervision in the community, Mr. Huff could become a solid contributing citizen.

It is estimated the cost of incarceration for one month is $2,407.78. Should a sentence of 262 months be imposed as recommended by the Probation Officer, the cost to taxpayers will be a minimum of $630,838.36 to house Mr. Huff if he remains in good health. Substance abuse and mental health treatment, as well as vocational training, will add additional costs with no chance to utilize any new skills learned in a productive work environment.

Mr. Huff is a young man with a long life ahead of him, unless his life is spent incarcerated. He committed a drug offense in an attempt to provide a good life for his family. This was not a violent offense involving victim losses. His conduct was indicative of a larger, more serious societal problem with the demand for drugs like oxycodone spiraling out of control. The recommended

sentence would effectively be a life sentence for Mr. Huff. This defies the intent of the Guidelines and fails to meet the goals of sentencing. Such a sentence is unnecessily harsh and lacks justice.

For all of the reasons contained herein, counsel for Mr. Huff respectfully suggests that a sentence between 5 and 10 years would be sufficient, but not greater than necessary to comply with the requirements of 18 U.S.C. §3553.

s/R. Scott Croswell
R. Scott Croswell
Ohio Reg. No. 019726
*Attorney for Defendant*
Croswell & Adams Co., L.P.A.
1208 Sycamore Street
Cincinnati, OH 45210
(513)241-5670
rscroswell@fuse.net

## CERTIFICATE OF SERVICE

I do hereby certify that on the 24th day of April, 2013 I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ELF system which will send notification of such filing to Kenneth Parker, United States Attorney's Office at Email: kenneth.parker@us.doj.gov.

s/R. Scott Croswell

# Placement of Sentences Under U.S.S.G. § 2D1.1 – FY 2010/2011

The following tables show the percentages of sentences within, above and below the guideline range for offenses involving common drugs that received sentences within the guideline range less than half the time.

The drug indicated is the primary drug type, i.e. for offenses involving multiple drugs, it is the drug producing the highest Base Offense Level.

The first table includes defendants in all criminal history categories combined; the second table includes only defendants in Criminal History Category I; the third table includes only defendants with no previous arrests or other criminal history.

The data shown in these tables were extracted from the U.S. Sentencing Commission's 2010 and 2011 Monitoring Datasets by Paul J. Hofer, Policy Analyst, Sentencing Resource Counsel Project, Federal Public and Community Defenders, and former Special Projects Director, U.S. Sentencing Commission. For a description of the Monitoring Datasets, see U.S. Sent'g Comm'n, Fifteen Years of Guideline Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform app. D at 1 (2004), and U.S. Sentencing Comm'n, 2010/2011 Guide to Publications and Resources 26-28 (2010). Although these particular analyses are not published by the Commission, the data underlying the tables are the same as the data used in the Commission's annual Sourcebook of Federal Sentencing Statistics. The data are publicly available at the Commission's website:                               . Using standard statistical software, such as SAS or SPSS, the Monitoring Dataset can be used to generate a wide variety of tables and graphs beyond those published by the Commission.

1



## Placement of Sentences Under U.S.S.G. § 2D1.1 – FY 2010/2011
### Offenses Involving Common Drugs Receiving Sentences Within Range Less than Half the Time

| | POSITION OF SENTENCES RELATIVE TO GUIDELINE RANGE | | | | |
|---|---|---|---|---|---|
| | Within Range | Above Range | Gov-Spon Below | Non-Gov-Spon Below | TOTAL |
| Cocaine | 4972<br>45.6% | 86<br>0.8% | 3714<br>34.1% | 2125<br>19.5% | 10897<br>100.0% |
| Crack | 3565<br>42.4% | 113<br>1.3% | 2695<br>32.1% | 2035<br>24.2% | 8408<br>100.0% |
| Heroin | 1333<br>41.7% | 39<br>1.2% | 991<br>31.0% | 834<br>26.1% | 3197<br>100.0% |
| Hashish and Hash Oil | 3<br>30.0% | 0<br>0.0% | 5<br>50.0% | 2<br>20.0% | 10<br>100.0% |
| Methamphetamine | 1613<br>43.8% | 28<br>0.8% | 1444<br>39.2% | 595<br>16.2% | 3680<br>100.0% |
| Meth Precursors | 168<br>36.4% | 0<br>0.0% | 169<br>36.7% | 124<br>26.9% | 461<br>100.0% |
| LSD | 8<br>36.4% | 1<br>4.5% | 8<br>36.4% | 5<br>22.7% | 22<br>100.0% |
| PCP | 29<br>42.0% | 0<br>0.0% | 30<br>43.5% | 10<br>14.5% | 69<br>100.0% |
| ICE | 186<br>33.3% | 5<br>0.9% | 206<br>36.9% | 161<br>28.9% | 558<br>100.0% |
| MDMA/Ecstasy | 219<br>26.5% | 5<br>0.6% | 351<br>42.5% | 251<br>30.4% | 826<br>100.0% |
| Steroids | 19<br>28.8% | 1<br>1.5% | 32<br>48.5% | 14<br>21.2% | 66<br>100.0% |
| Amphetamine | 2<br>25.0% | 2<br>25.0% | 2<br>25.0% | 2<br>25.0% | 8<br>100.0% |
| Dilaudid | 6<br>31.6% | 1<br>5.3% | 6<br>31.6% | 6<br>31.6% | 19<br>100.0% |
| Opium | 5<br>27.8% | 0<br>0.0% | 12<br>66.7% | 1<br>5.6% | 18<br>100.0% |
| Methcathinone | 6<br>37.5% | 0<br>0.0% | 10<br>62.5% | 0<br>0.0% | 16<br>100.0% |
| Meth Actual | 1349<br>35.7% | 19<br>0.5% | 1604<br>42.4% | 809<br>21.4% | 3781<br>100.0% |
| PCP Actual | 5<br>19.2% | 0<br>0.0% | 16<br>61.5% | 5<br>19.2% | 26<br>100.0% |
| Morphine | 6<br>33.3% | 1<br>5.6% | 5<br>27.8% | 6<br>33.3% | 18<br>100.0% |
| Oxycodone and similar | 393<br>29.4% | 7<br>0.5% | 558<br>41.7% | 380<br>28.4% | 1338<br>100.0% |
| Marijuana plant | 465<br>47.5% | 11<br>1.1% | 329<br>33.6% | 174<br>17.8% | 979<br>100.0% |
| Ketamine | 1<br>12.5% | 0<br>0.0% | 4<br>50.0% | 3<br>37.5% | 8<br>100.0% |

## Placement of Sentences Under U.S.S.G. § 2D1.1 – FY 2010/2011

Offenses Involving Offenders in Criminal History Category I and Common Drugs Receiving Sentences Within Range Less than Half the Time

| | POSITION OF SENTENCES RELATIVE TO GUIDELINE RANGE | | | | |
|---|---|---|---|---|---|
| | Within Range | Above Range | Gov-Spon Below | Non-Gov-Spon Below | TOTAL |
| Cocaine | 2952 / 45.4% | 39 / 0.6% | 2110 / 32.5% | 1395 / 21.5% | 6496 / 100.0% |
| Crack | 625 / 38.2% | 16 / 1.0% | 488 / 29.8% | 507 / 31.0% | 1636 / 100.0% |
| Heroin | 658 / 38.4% | 12 / 0.7% | 508 / 29.6% | 537 / 31.3% | 1715 / 100.0% |
| Hashish and Hash Oil | 3 / 30.0% | 0 / 0.0% | 5 / 50.0% | 2 / 20.0% | 10 / 100.0% |
| Methamphetamine | 685 / 42.1% | 8 / 0.5% | 634 / 38.9% | 302 / 18.5% | 1629 / 100.0% |
| Meth Precursors | 54 / 33.8% | 0 / 0.0% | 62 / 38.8% | 44 / 27.5% | 160 / 100.0% |
| LSD | 4 / 33.3% | 0 / 0.0% | 4 / 33.3% | 4 / 33.3% | 12 / 100.0% |
| PCP | 7 / 36.8% | 0 / 0.0% | 7 / 36.8% | 5 / 26.3% | 19 / 100.0% |
| ICE | 115 / 31.1% | 3 / 0.8% | 138 / 37.3% | 114 / 30.8% | 370 / 100.0% |
| MDMA/Ecstasy | 117 / 24.1% | 2 / 0.4% | 207 / 42.7% | 159 / 32.8% | 485 / 100.0% |
| Steroids | 16 / 28.1% | 0 / 0.0% | 28 / 49.1% | 13 / 22.8% | 57 / 100.0% |
| Amphetamine | 0 / 0.0% | 0 / 0.0% | 0 / 0.0% | 1 / 100.0% | 1 / 100.0% |
| Dilaudid | 0 / 0.0% | 0 / 0.0% | 5 / 55.6% | 4 / 44.4% | 9 / 100.0% |
| Opium | 5 / 29.4% | 0 / 0.0% | 11 / 64.7% | 1 / 5.9% | 17 / 100.0% |
| Meth Actual | 702 / 34.7% | 4 / 0.2% | 857 / 42.3% | 462 / 22.8% | 2025 / 100.0% |
| PCP Actual | 1 / 11.1% | 0 / 0.0% | 5 / 55.6% | 3 / 33.3% | 9 / 100.0% |
| Fentanyl n-phenyl | 1 / 25.0% | 0 / 0.0% | 2 / 50.0% | 1 / 25.0% | 4 / 100.0% |
| Morphine | 2 / 28.6% | 0 / 0.0% | 3 / 42.9% | 2 / 28.6% | 7 / 100.0% |
| Oxycodone and similar | 168 / 25.7% | 1 / 0.2% | 272 / 41.7% | 212 / 32.5% | 653 / 100.0% |
| Dextroamphetamine | 0 / 0.0% | 0 / 0.0% | 0 / 0.0% | 1 / 100.0% | 1 / 100.0% |
| Marijuana Plant | 329 / 45.7% | 6 / 0.8% | 226 / 31.4% | 159 / 22.1% | 720 / 100.0% |

## Placement of Sentences Under U.S.S.G. § 2D1.1 – FY 2010/2011

Offenses Involving Offenders With No Previous Arrests or Other Criminal History and Common Drugs Receiving Sentences Within Range Less than Half the Time

| | POSITION OF SENTENCES RELATIVE TO GUIDELINE RANGE | | | | |
|---|---|---|---|---|---|
| | Within Range | Above Range | Gov-Spon Below | Non-Gov-Spon Below | TOTAL |
| Cocaine | 1169 / 42.9% | 12 / 0.4% | 929 / 34.1% | 615 / 22.6% | 2725 / 100.0% |
| Crack | 76 / 34.4% | 1 / 0.5% | 60 / 27.1% | 84 / 38.0% | 221 / 100.0% |
| Heroin | 271 / 33.2% | 3 / 0.4% | 235 / 28.8% | 308 / 37.7% | 817 / 100.0% |
| Hashish and Hash Oil | 0 / 0.0% | 0 / 0.0% | 0 / 0.0% | 1 / 100.0% | 1 / 100.0% |
| Methamphetamine | 168 / 37.4% | 0 / 0.0% | 190 / 42.3% | 91 / 20.3% | 449 / 100.0% |
| Meth Precursors | 7 / 23.3% | 0 / 0.0% | 15 / 50.0% | 8 / 26.7% | 30 / 100.0% |
| PCP | 1 / 33.3% | 0 / 0.0% | 0 / 0.0% | 2 / 66.7% | 3 / 100.0% |
| ICE | 56 / 31.3% | 0 / 0.0% | 70 / 39.1% | 53 / 29.6% | 179 / 100.0% |
| MDMA/Ecstasy | 30 / 18.1% | 1 / 0.6% | 84 / 50.6% | 51 / 30.7% | 166 / 100.0% |
| Steroids | 8 / 29.6% | 0 / 0.0% | 16 / 59.3% | 3 / 11.1% | 27 / 100.0% |
| Amphetamine | 0 / 0.0% | 0 / 0.0% | 0 / 0.0% | 1 / 100.0% | 1 / 100.0% |
| Dilaudid | 0 / 0.0% | 0 / 0.0% | 1 / 33.3% | 2 / 66.7% | 3 / 100.0% |
| Opium | 2 / 22.2% | 0 / 0.0% | 7 / 77.8% | 0 / 0.0% | 9 / 100.0% |
| Meth Actual | 208 / 27.3% | 3 / 0.4% | 373 / 48.9% | 179 / 23.5% | 763 / 100.0% |
| PCP Actual | 0 / 0.0% | 0 / 0.0% | 2 / 100.0% | 0 / 0.0% | 2 / 100.0% |
| Morphine | 1 / 33.3% | 0 / 0.0% | 1 / 33.3% | 1 / 33.3% | 3 / 100.0% |
| Oxycodone | 29 / 18.2% | 0 / 0.0% | 69 / 43.4% | 61 / 38.4% | 159 / 100.0% |
| Hydrocodone | 15 / 41.7% | 1 / 2.8% | 13 / 36.1% | 7 / 19.4% | 36 / 100.0% |

4